Good morning everyone. Good morning. Good morning Judge Rovner. Good morning. And good morning to everyone in the courtroom. Judge Hamilton, Judge Brennan, and I are very happy that you're here. And we're going to call the very first case today, which is 22-3194 Chicago Joe's Tea Room, LLC v. the Village of Broadview. Good morning, Your Honors. Good morning. Good morning. I represent Plaintiff Appellants, Chicago Joe's Tea Room, LLC, and Pervis Conway. We are here today because the district court held that the Village of Broadview violated my client's constitutional rights by denying it a special use permit. That liability ruling has not been cross-appealed. The Village, in effect, has conceded that it violated the in today's appeal concern the proper measure of damages for the Village's constitutional violation. I'd like to start with the district court's ruling under Rule 701 of the Rules of Evidence to exclude the testimony of plaintiff's lay witness, David Donahue. In the briefing before the court, the parties disagreed on the standard of review for this issue. Our view is that because the issue below involved the interpretation and application of a rule of evidence, this court's review is de novo, without deference to the lower court. The Village disagrees. They say it's an evidentiary ruling subject only to review for abuse of discretion. We disagree. We don't think their cases cited in their brief really apply to this situation. The issue here was really the classification of Mr. Donahue's testimony and an interpretation of the language of Rule 701. And because it's an interpretation... Mr. Hirst, would you be kind enough to tell us a bit more about Mr. Donahue's involvement in the Polk Cats business? Yes, Your Honor. Mr... Here, forgive me, but to what degree did he have hands-on involvement with the day-to-day running of that business, once his role was limited to that of, I guess, an on-call consultant? And did he have any meaningful involvement at all after 2013? So, let me take that in a couple of parts. The on-call consultant period for Mr. Donahue with Polk Cats did not necessarily involve him being there every day, but he was just that, on-call for the day-to-day business managers to bring him questions. He was in a position to review financials. He still had access to the Polk Cats books and records that are the basis for his testimony. In this case, 2013, I don't know that there's anything in the record, Your Honor, that suggests... His day-to-day involvement was 2005 to 2007, and then it moved into the consultancy period. I don't think there's anything in the record suggesting a meaningful shift in his role after 2007. In other words, I don't know that the 2013 date has any significance in terms of a diminishment of his role. He remained on-call. He remained able to talk with the business people. At some point, he did lose the ability to have access to the books and records. That was obviously an evidentiary issue that I hope to get to in a few minutes, where he was giving testimony based on Polk Cats records but no longer had access to them and necessitating a third-party subpoena to that company, which happened. But the consultancy role was not in the minutia but with access and oversight. The 701 analysis here we submit is very straightforward. In our brief, we directed the court to the Year 2000 Committee comments on that role, which we believe are instructive and are directly on point. Those comments say, with some specificity, that the owner or officer of a business can testify to the value or projected profits of the business without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. We submit that's exactly what Mr. Donahue did and who he was. He offered testimony on the projected profits of Chicago Joes as compared to Polk Cats, a similar business. Do those comments address a business that never opened? They do not expressly, but the lightning lube case cited in those comments addresses a business that never opened. So while the plain language of the comment does not, the citation does. In the lightning lube case, the testimony was from a similarly situated business owner and it was in two parts. The first part was lost revenues for existing businesses and that was very easily and quickly admitted under 701. The second part was a set of projections by the business owner of revenues and profits and therefore damages for a set of franchises that never opened. And in the lightning lube case, if I recall correctly, the district court had admitted that evidence, correct? I don't recall the procedural posture. I know the Third Circuit affirmed it. I don't recall if it was a reversal or an affirmance of what the district court did. The Third Circuit allowed it in. Would there be a concern, Mr. Hirsch, if we were to allow for the admission of lay-off case-slash-expert testimony in this manner? We've got this obviously elaborate set of rules under Daubert and 702 and how opinion testimony is to be considered because of its nature. Would this be an exception that could create problems in the future? I think there's obviously lines to draw, right? And I understand that there'll be an opening to floodgates argument coming from the appellee, but I don't think that's a risk here for a couple of reasons. The first is in really honing in on this idea of a difference between an expert kind of inference and a comparison or simple math, which is what Mr. Donahue did. So let me get into that a little bit and see if I can answer that. Well, when you do, I, you know, Judge Lee, of course, noted a couple of things here. One was that Mr. Donahue's analysis made adjustments to the data from whole counts to account for the differences between the two businesses. And Judge Lee noted that he was using undisclosed, I guess, potentially unreliable methods. And he also emphasized that ultimately Mr. Donahue was making his estimate of lost profits based on records that were made available by Polkatz rather than any firsthand knowledge of Polkatz performances. So, and of course, you know, it's 10 hour per week consultancy or whatever it was that had ended. And that's why I use, you know, the date 2013 earlier. Well, let me try and answer both of those together because I think they fit together. So what Mr. Donahue was day to day in Polkatz from 05 to 07, and those were the records that his initial testimony relied on. There was later information as the case in 07 case, you know, moved into its second decade of litigation, circumstances changed. In Lightning Lube, the admitted testimony was based in part on an accounting report that the witness had not prepared. And that was an issue raised by the other side in Lightning Lube. And the third circuit said, no, that's okay. He had firsthand knowledge of what they were looking at. It was more or less done at his direction. And so there was not a prohibition on a 701 witness using a financial document that they did not personally prepare so long as they had sufficient foundation to say, well, that's what this line item means. This is where they got their information and so on and so forth. So that split, and I think Judge Lee cited Lightning Lube on that point and absolutely inverted it. He cites Lightning Lube for the proposition that a 701 witness cannot rely on something from a third party, and it's our contention that that case says the opposite. Going back, Judge Brennan, to your question, there's a difference between an expert inference, right, that we are going to have 10% of the time, a 5% rate or a 10% rate. That's expert stuff. That's not what Mr. Donahue did. He was not testifying as to the business value of Chicago Joe's or a going concern value. What he did was very concrete and with both businesses was based on his personal knowledge. What are the expenditures for this kind of business? Payroll, food, alcohol, security, taxes, parking. I know what those are. I worked at Polk Hats for two years day to day. I have those documents. I can make that summary. Then what were the revenues? And again, he had that information from Polk Hats. He understood what he expected Chicago Joe's to be as the manager of that company. Let me look at what the expenditures or the revenues will be, and then the profits is just math. It's just the revenues less the expenditures. There's an awful lot of judgment involved in all that, right? I'm not sure. What I'm thinking about, for example, is Kumho Tire. Kumho Tire, where the court tells us that somebody who has experience in a business can testify as an expert without having to necessarily a degree or peer-reviewed scholarly publications. They can rely on their practical experience, but it's an expert opinion. Right. Well, I don't think there's a, just because a 701 witness can testify doesn't mean that a 702 witness can't. Right, but what you're telling us is that drawing that line between 701 and 702 testimony where the same witness might be able to do both is a hard and fast legal line, and our review should be de novo, right? Well, the review is de novo because I think it's really a legal interpretation of that specialized knowledge language in the third prong of 701. So it's a de novo review because it's an interpretation of a rule, of a statute. The analysis is- The application, however, is very fact, case, and witness specific, right? I 100% agree with that, and I think there's some particular facts with Donahue here that warrant his admission. Again, he had first-hand work experience at both businesses. He was in the- What do you mean first-hand experience with Chicago Joe's? It never opened. In setting it up, he had to- I mean, that's the second issue here, right, is this new business rule and the question of whether a never-opened business can ever recover lost profits, and the Illinois law on that, as this court noted in the ProVardi case, says, well, that's not a per se rule. It's just an application- Mr. Hutch, didn't you waive any such argument about this, whatever this, you know, this new business rule? Because Broadwood, Broadview, as I recall, had sought the exclusion of Mr. Donahue's opinion as to lost profits on the ground that Illinois law treats the anticipated profits of a new business as too speculative and remote to support a recovery, and you didn't respond to that argument below, and Judge Lee certainly noted that. Now, you seem to be arguing that this new business rule is not so firm a bar as Broadview and Judge Lee believe, but it looks to me as if you probably, you know, waived the argument by not responding to the point below, which, of course, would add additional support for Judge Lee's ruling. Your Honor, I would make two points on that. The first is that the waiver that Judge Lee found was in response to a motion in limine, not a merits motion. There's not any authority from the village or in the district court's opinion that says failure to respond to a motion in limine constitutes a substantive waiver of the issue the way it would if you didn't respond on a summary judgment motion. In limine rulings are, by their nature, temporary and can be revisited. The more substantive point is that we did respond. I would direct the court to docket entry 928 page 8, docket entry 926 page 10. In both instances, Chicago Joe's below cited the Belleville Toyota case for the Illinois rule that lost profits are recoverable and that the new business rule does not act as a blanket prohibition. It didn't, those arguments did not use the phrase new business rule, but they were there and we submit were sufficient to defeat the waiver argument. Mr. Hirsch, did either side address whether this question should be governed by federal evidence law or state substantive law? Not as an either or. I think both sides argued it at both levels. In other words, the village made a two-pronged attack on this testimony under 701 and then under Illinois law and the plaintiff's response below was not to say that one or the other was in an inappropriate basis for argument, but that both were just substantively wrong. So we can avoid an academic exercise in eerie railroad law. In this particular instance, yes. Your honors, if I may, I'd like to reserve the floor. Thank you, your honors. Hello. Hello. Good morning. May it please the court, Cynthia Granfield on behalf of defendants appellees. Your honors, throughout the course of this case, Chicago Joe's has attempted to intimidate the village by presenting a series of false inflated damages. In doing so, however, they failed to meet the standards of the federal rules of evidence and they failed on multiple occasions to comply with the federal rules of civil procedure. There are three points that I'd like to highlight and raise to the court. First, it was properly not admitted under rule 701 and it was not an abuse of discretion for the court to exclude his testimony. Second of all, it was within the court's discretion to remove from consideration these last minute and undisclosed obligation damages as termed by the plaintiff. Lastly, with respect to the motion for leave to amend, that also was properly within the court's discretion to deny. With respect to Mr. Donohue under rule 701, the plaintiff is repeatedly referring to lightning lube. Lightning lube involves a case where there is a franchisor who's already franchised out existing businesses. He knows how much he's going to get in royalty fees. He has an estimation as to how many franchises he's going to franchise out in a year. So that is an existing business. Furthermore, that case is reviewed under an abuse of discretion standard. With respect to... Is it correct, I'm having a little trouble double checking this, but is it correct that there the district court allowed the evidence? Correct. The third circuit said that was not an abuse of discretion. Correct. In addition, the seventh circuit in Vondaroo also acknowledged the fact that that circuit was reviewing that under an abuse of discretion standard and again applied an abuse of discretion standard with respect to the exclusion of lay witness testimony under rule 701. With respect to Mr. Donohue, not only is he making inferences or doing an analysis of data, he doesn't have data to begin with. There are multiple instances in the record where Mr. Donohue himself admits that he doesn't have data to support these calculations that he's made. I would direct the court's attention to 10617, which is Mr. Donohue's deposition. On page 113, in the lines 15 through 17, he says he doesn't have true and accurate figures of Polkatt's revenue. On page 124, 1 through 14, he says he doesn't have data as to dancer-generated income data. On page 132, lines 10 through 18, he says he doesn't have data as to projected income. On page 133 through 134, on lines 1 through 7 and 24, he says he doesn't have projected revenue data. On page 135, lines 9 through 24, he doesn't have admission fee revenue. On page 141, lines 4 through 10, he doesn't have access to historical sales report. On page 143, 5 through 9, he doesn't have access to data on parking revenue. On page 146, lines 7 through 21, he doesn't have access to parking fees. So not only is he making an inference and analysis that's not permitted under Rule 701 and falls squarely within 702, he is also not really relying on data. With respect to a further explanation as to why this falls under 702, I think that we can use Mr. Donohue's own testimony. On, for example, he asks, so you made adjustments up and down on these numbers based on what you thought was different between Chicago Joes and Polkats. Answer, yes. All right. Did you retain any experts to make these sort of adjustments? No. I used my own experience and knowledge in managerial history with Polkats to make the adjustments. He is closely mirroring the introductory clause of 702 that talks about a witness who is qualified as an expert by knowledge, skill, experience. He again says this with respect to, again, on page 132. Question, so there are no documents supporting the $720,000 income from the champagne room you claim on this sheet. There are no documents supporting that. It's just purely speculative. Answer, no. It's an educated guess based on my knowledge and experience of being a managerial consultant at Polkats for at least two years. So again, he's relying on his experience and he's making inferences and making an analysis based on that experience, which would fall solidly under 702 and would be excluded so far as lay witness testimony pursuant to 701. Let me ask you, could I take you, to the extent that the villages expert critiqued Mr. Donahue's lay opinion as to damages, was there any proper role for Mr. Sargent to play as a rebuttal expert in responding to those criticisms and endorsing Mr. Donahue's analysis? There was no role for Mr. Sargent to play because, first of all, Mr. Sargent was only disclosed as a rebuttal witness with respect to Chicago Joe's. So the defendant would have never presented their own expert as a witness if Chicago Joe's was unable to present evidence of the revenue to begin with, or lost profits, excuse me, to begin with. So he would never even be presented as a witness and it would be also improper under Rule 703 for him to serve as a mouthpiece for Mr. Donahue. And I would also add that because of what I've just said about the fact that he's not even relying on data and he's contending that it is an opinion, it would be inappropriate for Mr. Sargent to offer opinion testimony under Rule 703 in relation to Mr. Donahue's opinion testimony because he's not relying on facts or data that Mr. Donahue is providing, he's relying on an opinion that Mr. Donahue is providing. Judge Lee excluded Mr. Donahue's lay opinion as to any lost profits. Was there an opinion as to lost profits for the village to respond to? No, there was no opinion for the village to respond to. With respect to the exclusion of these obligation damages as termed by Chicago Joe's, I first note that as they have consistently seemed to do, they raise new arguments. For the first time in their reply brief, they argue that under 26E1A that these damages were otherwise made known. That's not mentioned anywhere else and it's not mentioned in the multiple briefs that they were able to file in the district court including 1001, 1003, 1005, 1007. Again, it really fails to acknowledge that the onus is on them to disclose the computation of the images, what the categories are, and what the documents are. You know Ms. Greenfield, I really have a question about that because, sure, the plaintiff's rule 26A disclosure as to damages, it looks woefully inadequate, but why didn't the village object to the disclosure on damages when it was filed in 2012? I keep wondering, why did you wait until the eve of trial, which of course was nearly a decade later? Sure Your Honor. We had believed subsequent to going through all of discovery, including expert discovery where lost profits were discussed, we believed that those were the damages that they were claiming. We had no reason to believe that they would be claiming these obligation damages, particularly given the tangled web of transactions and the dates of some of those transactions. We were only aware that they were claiming these obligation damages at the time that we got served actually a settlement demand with these damages being claimed. And that was, in fact, as we were preparing for trial, we were all noting amongst ourselves that we really didn't understand what exactly they were going to claim in damages because the lost profits had been excluded. So we had no reason to bring it to the fore, if you will, because we didn't realize that they still had this whole category of damages out there that they were trying to claim that they had never disclosed. What was the amount of the so-called obligation damages? I believe it was around $5 million. And those were obligations to whom or what? Well, it's a variety of things that's confusing. They did... I can ask Mr. Hirsch. It's his client, but I just... It's for earnest money. It's for the articles. It's also for a triple net lease that they're claiming was paid. There's also some overlap there that's very confusing because there are damages claimed, for example, for repairs that were made. There's some payments that were made by United Fire to United Fire, people that are not plaintiffs. There's some payments that were made by Dave Donahue directly to someone, but not by Chicago Joe's. I would say generally speaking, I believe that some of those exhibits are in rule... Are in exhibits numbers 23 through, let's say, 30 of their exhibits. And it's further heightened by the fact that not only did we not know that they were going to claim these damages, we didn't even have the supporting documents for that. Like I said before, there are several entities involved here, but only two of them are plaintiffs. So we didn't even have... That's why I made the point of we didn't even have the check registers because how were we supposed to even figure this out, even if it was on us to try and figure out what these damages were? How could we possibly do that? In fact, if you look at those exhibit numbers in the 20s, you'll see that on the first page of the exhibit number, it's actually a subpoena that we as the defendants sent out trying to get more information. So, we were prejudiced in this regard, too, because as Judge Lee noted in his 2016 opinion on summary judgment, we, for example, did not argue about damages, so we didn't rule on damages. Well, these obligation damages are a relatively novel concept, particularly when you look at the fact that they're claiming damages from a triple net lease that they signed in 2007 after their special use permit was denied, and while they're not challenging the state statute that prohibits the Village of Broadview from citing something there that was passed in 2007, and then they're even claiming a triple net lease that was signed in 2017 as well. So, we would have certainly made some sort of claim as to causation and if these damages could even be claimed if we would have been able to be aware that they were claiming it in this way. Ms. Granfield, could I back up for just a second and ask you a similar question about the new business rule versus federal rules of evidence? Do you agree that as that issue has been litigated so far, there's been no sorting out of federal versus state law here? Right. There has not been. Okay. That does simplify things a bit. Ms. Granfield, did they waive that whole argument? Yes, and I said that in my response brief and I cited to the specific provision in their brief on, I believe it's page 30 to 34 of their brief, where they themselves acknowledged that they didn't argue it at the trial court level. So, if we're operating under an abuse of discretion standard, which I believe that we are, that alone would lead to a basis for affirming that opinion. So, do you know what we'll find when we go back and look at docket 928 and whatever the other, I didn't get the other one. I think it was 926, 928, I'm not sure. The docket number that the judge entered the opinion excluding the obligation damages? I believe it was citations of the Belleville case. Oh, okay. Belleville-Toyota. Okay, yes. That's the only citation that they make is the Belleville-Toyota case, but they don't talk substantively about the new business rule. Okay, thank you. Lastly, with respect to the leave to amend, I just wanted to point out that, again, that is not an abuse of discretion. They, in fact, in their docket number 738, where they're moving for leave to amend, they simply say it will not cause undue delay. They don't identify any reason why they couldn't have pled this earlier. In fact, they say they didn't need to plead this earlier, so they implicitly admit that this was a strategic decision on their part not to challenge the state statute, and they were very thoroughly questioned by this court back at the interlocutory appeal as to why it was appropriate for this court to have jurisdiction, and this court ultimately decided that it did have jurisdiction over the interlocutory appeal because it totally mooted and eliminated injunctive relief. So right after they got that opinion and the court rules that there's jurisdiction, they go back to the district court and say, hey, I want to amend my complaint and give another basis as to why I can have injunctive relief. That prejudices the district court, it prejudices us with the time we wasted on briefing injunctive relief, and it actually also prejudices this circuit. If the district judge might have decided that the other way, if he had, tell me what you think the case would have looked like procedurally to accommodate that challenge to the state statute. Sure. I believe that there would still have needed to have been additional discovery with respect to that because, again, any Section 1983 cause of action is by its nature a tort, so you're going to have to look at causation for damages. The Village of Broadview, as acknowledged by the Seventh Circuit in your interlocutory opinion back in 2018, I believe, acknowledged the fact that the village is a non-home rule municipality, so they have no ability to derive from that statute. So we would have to go back and do discovery and sort out. Well, and presumably you'd need to bring in the Attorney General, correct, to defend the constitutionality of a state statute being challenged for the first time? Right. You would also need to bring in the Attorney General under Rule 5.1, and you would also need to give them a specific notification of this pleading. And in addition to that, you would also need to do additional discovery to sort out if, in fact, it was unconstitutional, what damages were attributable to this statute that the Village of Broadview had no power over and had to comply with versus what damages were attributable to any wrongful denial of a special use permit with respect to a strip club. So if there are no additional questions, I would just say that they didn't follow the rules of civil procedure, they didn't meet the rules of evidence for the damages that they wanted to get in, and they were falsely inflated and not justified. They got got. They should stay got. So I would respectfully request that this Court affirm in all respects in favor of defendants' appellees. Thank you. Thank you, Ms. Greenfield. Thank you. Hello again, Your Honors. Let me start, Judge Hamilton, with your question on those out-of-pocket damages. Are these obligation damages? That's the term that's been used. I think using the descriptor out-of-pocket is synonymous. It was land acquisition costs. It was the carrying costs of the property, property taxes. There was some initial work done, I believe, to begin to fix the facility up for the business. So these were distinguished from lost profits because they were hard damages. And whether they're called obligation damages or out-of-pocket damages, that was the idea, that this was... How are land acquisition costs damages if you still own the land? There would potentially be diminished value. I mean, whether or not that proved out to be something recoverable... So you don't just look at the amount of the check. I probably not. You probably would need an appraisal, etc. And was any of that offered? There was expert testimony on the land use. I don't recall exactly if it got to the point where there were numbers... Can I make sure I understand the basic damages theory here, Mr. Hirsch? Sure. And that is, the theory is, the plaintiffs are saying if they had gotten a permit in the spring of 2007 from the village before enactment of the state statute, you would have been ready to open with vested rights over that summer and then would have been able to open or continue in business despite the state statute and made millions and millions of dollars. That's the idea. The initial application was in December of 06. But the denial was, what, February or March? That's right, February. Okay. So I want to address just a couple of other quick points from the counsel's presentation. Mr. Donahue was deposed 3 times in 2013 and 2014. And I think this idea that the village did not know what his damages testimony or that there were some sort of surprise following the first appeal doesn't match the transcripts of those depositions. They had his spreadsheets, they put them in front of him, and they had him crawl through them one by one. But aren't the defendants, though, entitled, in essence, to say plaintiffs are obliged to give us a definitive statement of their damages under 26A or through some kind of supplement? Not something they have to piece together. I think the word in 26A is a computation, and that's correct. There's an obligation on the plaintiff to not make the defendant go fishing. But what the defendant was able to do here is retain their own 702 expert, who looked at all of what Donahue did, his documents and his depositions, and was able to deliver a 702 report saying, Donahue got this wrong, he should have assumed this, he did this wrong, and the other thing, at a very significant level of detail. That report, I believe, was 2014. If the village was still guessing or uncertain as to what the plaintiff's damages were, that report would not exist. I'm not sure I'm persuaded by that. It's one thing to say we're going to rebut or analyze and critique what we have, but we're entitled, as a party in the civil case, to pin the plaintiff down. The specifics, where it's not just one witness, who's not even a party, but where you as counsel say, here's our list. We believe that that report and then the plaintiff having a rebuttal expert come behind, the rebuttal expert didn't say, no, you've got it wrong, you're looking at the wrong thing. The rebuttal expert went right back at the same data, documents, numbers, and testimony and said, this is the damages calculation, here's why you're wrong. And you agree that 26A enforcement is a matter left to the district court's discretion? Yes, that's an abuse of discretion, yes. Thank you, Your Honor. Thank you, Mr. Hirsh. Thank you, Ms. Granfield, and the case is going to be taken under advisement. Thank you.